Filed 1/3/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALFRED A. GONZALEZ et al.,<br><br>      Plaintiffs and Appellants,<br><br>      v.<br><br>CITY OF NORWALK,<br><br>      Defendant and Respondent. | B276871<br><br>(Los Angeles County<br>Super. Ct. No. BC553119)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |

It is ordered that the opinion filed December 4, 2017 is modified as follows:

1.      On page 2, the first sentence of the second paragraph is deleted, and the following sentence is inserted in its place: "When the voters approved the telephone user tax in 2003, the Internal Revenue Service interpreted Internal Revenue Code section 4251 to apply to nearly all telephone service, excepting the telephone service provided to some very limited categories of telephone users (such as service members in combat zones and certain nonprofit organizations).  (26 U.S.C. § 4253.)"

2.      On page 21, heading (IV) is deleted, and the following is inserted in its place:  "IV. The 2006 Change in the

Interpretation of the Internal Revenue Code Did Not Effect a Change to the Meaning of Norwalk Municipal Code Section 3.36.060"

3. On page 22, the last sentence is deleted, and the following sentence is inserted in its place: "Thus, because the Norwalk Municipal Code specifically referenced IRC section 4251, it incorporated that section's exemptions as they were understood to exist when the voters passed Measure A in 2003."

There is no change in the judgment.

The petition for rehearing, filed December 15, 2017, is denied.

_____

EDMON, P.J.                    LAVIN, J.                    BACHNER, J.*

_____

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/4/17 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| ALFRED A. GONZALEZ et al., | B276871 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC553119) |
| v. | |
| CITY OF NORWALK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge. Affirmed.

Girardi & Keese, Thomas V. Girardi, Howard B. Miller, Robert Finnerty, and Alexandra T. Steele; Law Offices of Martin N. Buchanan and Martin N. Buchanan; Slovak, Baron, Empey, Murphy & Pinkey, Thomas S. Slovak and Stephen J. Schultz for Plaintiffs and Appellants.

Richards, Watson & Gershon, B. Tilden Kim and Saskia T. Asamura; Daley & Heft, Scott Noya and Lee H. Roistacher for Defendant and Respondent.

In 2003, Norwalk voters approved a 5.5 percent user tax on all municipal utilities, including telephone service.  As adopted, the telephone user tax applied to most telephone service, but expressly excluded services "exempt from or not subject to . . . the tax imposed under Section 4251 of the Internal Revenue Code." (Norwalk Municipal Code, § 3.36.060, subd. (D).)

When the voters approved the telephone user tax in 2003, Internal Revenue Code section 4251 exempted some very limited categories of telephone users (such as service members in combat zones and certain nonprofit organizations), but otherwise applied to all telephone service.  (26 U.S.C. § 4253.)  By 2006, however, the federal courts and the Internal Revenue Service had interpreted section 4251 to exclude many cell phone and landline plans from the federal tax.  Accordingly, in 2007, the Norwalk City Council (City Council) adopted Ordinance No. 07-1586 (the 2007 ordinance), which deleted the reference to Internal Revenue Code section 4251 from the Norwalk Municipal Code in order "to impose the utility user tax on telephone communication services in a manner that is consistent with how it has been historically imposed."

Plaintiffs Alfred Gonzalez and David Reynoso (plaintiffs) are residents of the defendant City of Norwalk (Norwalk or City) who pay the telephone user tax through their cellular telephone providers.  In 2014, plaintiffs filed a complaint asserting that the 2007 ordinance violated Propositions 62 and 218, which prohibit local governments from imposing, extending, or increasing taxes without voter approval.  Plaintiffs urged that when Norwalk voters approved a utility user tax in 2003, they "specifically voted *not* to tax services that were exempt from taxation under"

Internal Revenue Code section 4251. Thus, plaintiffs suggested, eliminating the ordinance's reference to the Internal Revenue Code had the effect of imposing, extending, or increasing taxes within the meaning of Propositions 62 and 218.

The City demurred, asserting that the 2007 ordinance did not violate Propositions 62 or 218 as a matter of law. The trial court sustained the demurrer without leave to amend and subsequently entered a judgment of dismissal.

We affirm. While the 2007 ordinance made a technical change to the Norwalk Municipal Code, it did not impose, extend or increase the telephone tax. Accordingly, as a matter of law the 2007 ordinance did not violate Propositions 62 or 218.

## BACKGROUND

### I.

### In 2003, Norwalk Voters Adopt Municipal Code Section 3.36.060, Which Imposes a 5.5 Percent Tax on Telephone User Fees

In 1992, the City enacted a user tax on various utilities, including telephone service (utility user tax).

In about 2003, pursuant to a stipulation entered into in *Howard Jarvis Taxpayers Ass'n and Jerry Ori v. City of Norwalk, et al.*, Case No. VC038845, the Norwalk City Council (City Council) agreed to submit the utility user tax to the voters for ratification. Thereafter, on July 1, 2003, the City Council adopted Resolution No. 03-40, setting a special election and providing that Ordinance No. 1541 (referred to in the ballot materials as Measure A) would be submitted to the voters for approval.

In pertinent part, Ordinance No. 1541 (hereafter, Measure A or the 2003 initiative) provided as follows:

3

"The People of the City of Norwalk do ordain as follows:

"Section A.  Chapter 3.36 of the Norwalk Municipal Code ('Code') entitled 'Utility User Tax' which applies a five and one-half percent (5½%) tax rate on all telephone, electric and gas charges in the City of Norwalk is hereby ratified and approved as set forth in Chapter 3.36 of the Code as of July 1, 2003, attached hereto as Exhibit 'A' and incorporated herein by this reference[,] and the City is hereby authorized to continue to impose and collect the utility tax as provided by the terms set out in Chapter 3.36 of the Code.

"Section B.  In no event may the City Council alter the provisions of section 3.36.060, 3.36.070, and 3.36.080 to increase the five and one-half percent (5½%) rate on telephone, electric and gas use without the approval of a majority of voters of the City, voting on the question of the tax rate; provided, however, the City Council is hereby authorized to amend any other provisions of Chapter 3.36 of the Code by three (3) affirmative votes of its members to, without limitation, carry out the general administrative purposes of Chapter 3.36 of the Code to reasonably implement the collection of the utility user tax through public utilities and other service suppliers as authorized in Chapter 3.36 of the Code.

"Section C.  It is the intent of the voters to apply the provisions of Chapter 3.36 of the Code to the fullest extent permitted by the law to ratify the City's previous and continued collection of the tax."

On September 30, 2003, 64.6 percent of Norwalk voters approved Measure A, which was codified in pertinent part as Norwalk Municipal Code section 3.36.060.  Two provisions of section 3.36.060 are relevant here:

4

(1)     Section 3.36.060, subsection A provided:  "There is imposed a tax on the amounts paid for any interstate, intrastate and international telephone communication services, including cellular telephone services and other telephone services that gain access to the public switched network (PSN) by means of various technologies, by every person in the City using such services. The tax imposed by this section shall be at the rate of five and one half percent of the charges made for such services."

(2)     Section 3.36.060, subsection D provided: "Notwithstanding the provisions of subsection A of this section, the tax imposed under this section shall not be imposed upon any person for using intrastate, interstate and international telephone communication services to the extent that the amounts paid for such services are exempt from or not subject to . . . the tax imposed under Section 4251 of the Internal Revenue Code."

## II.
## Internal Revenue Code
## Sections 4251 and 4252

When the City of Norwalk adopted Measure A in 2003, section 4251 of the Internal Revenue Code (IRC) imposed a tax (sometimes referred to as a "federal excise tax") on, among other things, "local telephone service" and "toll telephone service."  (26 U.S.C. § 4251(b)(1)(A)–(B).)  Section 4252(b) of the IRC defined "[t]oll telephone service" as:

"(1)  a telephonic quality communication for which (A) there is a toll charge *which varies in amount with the distance and elapsed transmission time of each individual communication* and (B) the charge is paid within the United States, and

"(2)  a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the

5

basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located." (26 U.S.C. § 4252(b), italics added.)[1]

---

[1] When sections 4251 and 4252 of the IRC were adopted in 1965, only AT&T provided long distance telephone service. (*National Railroad Passenger Corp. v. U.S.* (D.C. Cir. 2005) 431 F.3d 374, 375 (*NRPC*).) AT&T offered two billing plans: "The first, Message Toll Service (MTS), charged each individual call based on duration, distance traveled, and time of day. Under the second plan, Wide Area Telephone Service (WATS), customers purchased blocks of usage time for a flat fee. WATS customers paid either a flat monthly rate for an unlimited number of calls and minutes or a lower rate for up to fifteen hours of calling plus a further charge for each additional hour." (*Id.* at p. 375.) Congress designed IRC section 4252(b)(1) to cover MTS, and section 4252(b)(2) to cover WATS, such that "section 4252(b) covered *all* long-distance services existing in 1965." (*NRPC*, at p. 375, italics added.)

By 1979, some long distance telephone service was billed based on only the length of telephone calls made by the user, without regard to distance. In a 1979 ruling, the Internal Revenue Service concluded that a long distance telephone call for which the charge varied with elapsed transmission time but not with distance constituted "toll telephone service" within the meaning of IRC section 4252(b)(1). The Internal Revenue Service ruling explained: "The toll charges described in [IRC] section 4252(b)(1), that vary in amount with both distance and elapsed transmission time of the individual communication, reflect Congress' understanding of how the charges for long distance calls were computed at the time the section was enacted. The

6

Until 2006, the Internal Revenue Service (IRS) interpreted sections 4251 and 4252 of the IRC to apply to *all* telephone service, with the limited exception of those services specifically exempt pursuant to IRC section 4253.[2] (Notice 2005-79, 2005-46 I.R.B. 952–953.)  In 2005 and 2006, however, telephone service providers and customers challenged the application of IRC sections 4251 and 4252 to long distance telephone plans whose fees did not vary according to *both* "the distance and elapsed transmission time of each individual communication"—e.g., to cell phone plans that charged customers according to the length of calls, without regard to the distance of the transmission.  Five federal circuit courts agreed with the challengers, holding that IRC sections 4251 and 4252 did not apply to such plans.  (*Reese Bros., Inc. v. United States* (3d Cir. 2006) 447 F.3d 229; *Fortis,*

---

intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute." (Rev. Rul. 79-404, 1979-2 C.B. 382.)

[2]    A limited statutory exemption from the tax imposed by IRC section 4251 was provided in IRC section 4253 for public pay phone operators, news services, communications companies, service members in combat zones, international organizations, state and local governments, and certain nonprofit organizations. (26 U.S.C. § 4253.)

Neither party has suggested that the exemptions in IRC section 4253 are relevant to any of the issues before us. Thus, for ease of discussion, we will refer to the federal excise tax, as it was enforced by the IRS until mid-2006, as having taxed "all" telephone service.

*Inc. v. United States* (2d Cir. 2006) 447 F.3d 190; *NRPC, supra,* 431 F.3d 374; *OfficeMax, Inc. v. United States* (6th Cir. 2005) 428 F.3d 583; *American Bankers Ins. Group v. United States* (11th Cir. 2005) 408 F.3d 1328.)

In June 2006, the IRS issued Notice 2006-50, which stated that in light of the holdings of the five federal circuit court cases, it would no longer collect federal excise taxes on any "long distance" or "bundled" service. "Long distance service" was defined as "telephonic quality communication with persons whose telephones are outside the local telephone system of the caller." "Bundled service" was defined as "local and long distance service provided under a plan that does not separately state the charge for the local telephone service," including "both landline and wireless (cellular) service" under plans "that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time." (Notice 2006-50, 2006-25 I.R.B. 1141–1144.) In January 2007, the IRS issued Notice 2007-11, which clarified and modified Notice 2006-50. (Notice 2007-11, 2007-5 I.R.B. 405–406.)

## III.

### Norwalk City Council Ordinance No. 07-1586

On March 20, 2007, the City Council adopted Ordinance No. 07-1586 (the 2007 ordinance). In its statement of purpose, the City Council explained that the City of Norwalk had imposed a utility user tax on telephone communication services since July 13, 1992. For "ease of administration and convenience of the telephone communication service providers," the City had for many years administered its utility user tax consistently with the administration of the federal excise tax (26 U.S.C. sections 4251 et seq.). However, the IRS's revised interpretation of the federal

8

excise tax as expressed in IRS Notice 2006-50 "is inconsistent with both the original legislative intent of the City's telephone user tax and the manner in which the City has historically imposed its telephone user tax," and the City Council "wishes to continue to impose the utility user tax on telephone communication services in a manner that is consistent with how it has been historically imposed." Accordingly, the City Council adopted the following ordinance, which "clarifies and restates the type of telephone service that is subject to the tax without reference to the Federal Excise Tax and does not increase the tax or change or expand the type of telephone services that are subject to the tax":

"Section 1. Title 3 of the Norwalk Municipal Code is hereby amended by deleting paragraph D from Section 3.36.060 of Chapter 3.36.

"Section 2. Because the provisions of the Norwalk Municipal Code, as amended by this ordinance, do not alter the amount of the City's telephone user tax, do not expand the application of the tax, and are substantially the same as the previous provisions of the Code as they read immediately prior to the adoption of this ordinance, the amendments made by this ordinance shall be construed as continuations of the earlier provisions and not as new enactments."

The City Council Agenda Report describes the 2007 ordinance's "Fiscal Impact" as follows: "None if adopted. However, there is a potential for significant loss of tax revenues to the City if the proposed ordinance is not adopted."

9

# IV.
## The Present Litigation

*A.      Complaint and First Amended Complaint*

Plaintiffs filed the present action on July 29, 2014, and filed a first amended complaint on February 20, 2015.  The City demurred to the first amended complaint, and the trial court sustained the demurrer with leave to amend.

*B.      Second Amended Complaint*

Plaintiffs filed the operative second amended complaint on June 29, 2015.  It alleged as follows:  Prior to 2007, the Norwalk Municipal Code excluded from its utility user tax services "exempt from or not subject to the tax imposed under Sections 4251, 4252, and 4253 of Title 26 of the United States Code ('Federal Excise Tax').  Thus, any services not taxable under the Federal Excise Tax [could not] lawfully be taxed by the City," and telephone service billed at rates "that do not vary with both distance and transmission time, therefore, . . . fall outside of the Federal Excise Tax, and hence, the [utility user tax]."  In 2007, without voter approval, Norwalk amended the utility user tax by striking the reference to the federal excise tax.  The 2007 ordinance violated Propositions 62 and 218, which provide that no local government may impose a general tax unless such tax is approved by the voters.

The second amended complaint asserted that the City's actions gave rise to six causes of action:  (1) declaratory and injunctive relief, (2) money had and received, (3) unjust enrichment, (4) writ of mandamus, (5) violation of Government Code section 53723 (Proposition 62), and (6) violation of the

10

California Constitution, Article XIII, section C (Proposition 218).[3] Plaintiffs sought a declaration that the utility user tax had been illegally applied and collected, an injunction preventing further collection of the utility user tax on telephone services not taxable under the federal excise tax, a writ of mandate requiring the City to provide a constitutionally adequate legal remedy to taxpayers, an order that the City account for and return the taxes illegally collected, prejudgment interest, and attorney fees.

### C.     *City's Demurrer to Second Amended Complaint*

The City demurred to the second amended complaint.  On April 6, 2016, the court sustained the demurrer to all causes of action without leave to amend, explaining as follows:

"[Plaintiffs'] . . . argument is this:  [Proposition 62] provides that cities cannot 'impose' a general tax unless they submit that tax to the city's electorate, which Norwalk did not do in 2007. [Plaintiffs] therefore would conclude the Norwalk tax is invalid.

"[Plaintiffs'] logic is incorrect.  Norwalk voters approved [the] 5.5% phone tax in 2003.  The City Council's 2007 deletion of the federal reference changed an invisible legal detail in an old and voter-approved tax.  The deletion did not impose a new tax. [Plaintiffs do] not allege the 2007 deletion had the effect of costing taxpayers more tax dollars.  Before and after the 2007 deletion, as [plaintiffs] conceded in oral argument, the 5.5% tax on monthly cell phone bills remained the same.  As far as taxpayers were concerned, then, the deletion had no practical or discernible effect.  The Norwalk City Council thus did not 'impose' a phone tax in 2007.  This claim fails.

---

[3]     Plaintiffs have since abandoned their causes of action for money had and received and unjust enrichment.

11

"[Plaintiffs'] constitutional argument likewise fails. [Their] constitutional argument is as follows. Section 2(b) of Article [VIII C] of the California Constitution specifies that no local government may 'impose, extend, or increase' any general tax unless voters approved the tax. [Plaintiffs say] Norwalk indeed did 'impose,' 'extend,' and 'increase' this tax in 2007. But Norwalk did not 'impose' this tax in 2007, as the previous paragraph established. Nor did it 'increase' the tax, because the level and the size of the tax remained exactly the same.

"That leaves us with the third constitutional verb: 'extend.' Did the City Council action 'extend' the phone tax? The answer is no.

"To construe the word 'extend,' it is proper to consult the Proposition 218 Omnibus Implementation Act, which the Legislature passed in response to Prop 218. Our Supreme Court mentioned this statute when interpreting California's Constitution. (See *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 290–291 (ultimate constitutional interpretation authority belongs to the judiciary, which may consult a contemporaneous construction of the constitutional provision made by the Legislature, including the Proposition 218 Omnibus Implementation Act).)

"This statutory interpretive aid states that 'extended' means a decision by local government 'to extend the stated effective PERIOD for the tax or fee or charge, including, but not limited to, amendment or removal of a sunset provision or expiration date.' (Government Code 53750, subd. (e) emphasis added).)

"The City Council did not extend the stated effective period of the Norwalk cell phone tax in 2007. This tax was a[]

permanently ongoing tax when the voters approved it in 2003.  So it remained in 2007.  The 2007 action did not extend the period of the tax.  Nor did the 2007 action extend the tax to more taxpayers or to more tax bills.  As far as taxpayers paying tax bills could see in 2007, nothing changed.

"[Plaintiffs'] claims have no legal validity. . . .  The demurrer is sustained without leave to amend because [plaintiffs have] made no attempt to suggest [they] can amend [their] pleading to greater effect."

A judgment of dismissal was entered on April 20, 2016, and notice of entry of judgment was served on April 25, 2016.  Plaintiffs timely appealed.

## CONTENTIONS

Plaintiffs contend that when the City Council adopted the 2007 ordinance, which deleted subsection D from section 3.36.060 of the Norwalk Municipal Code, it unlawfully "imposed, extended, or increased a local tax without voter approval" in violation of Propositions 62 and 218.

The City contends the voters approved a 5.5 percent utility user tax, and the 2007 ordinance merely made a minor change to the utility user tax provisions to ensure that the tax approved by the voters in 2003 remained the same.  Accordingly, the City Council's adoption of the 2007 ordinance did not impose, extend, or increase a tax without voter approval in violation of Propositions 62 and 218.

## STANDARD OF REVIEW

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law."  (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.)  Our review of the trial court's interpretation of a statute or constitutional provision is also de novo.  (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933–934 (*California Cannabis Coalition*).)

## DISCUSSION

### I.

### The Legal Framework:
### Propositions 62 and 218

In 1986, California voters passed Proposition 62, which, as subsequently codified in Government Code section 53723, requires local governments to seek voter approval of all new general taxes.  It provides:  "No local government, or district, whether or not authorized to levy a property tax, may *impose any general tax* unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue." (Gov. Code, § 53723, italics added.)

In 1996, voters passed Proposition 218, which added to the California Constitution the requirement that local governments seek voter approval of new general and special taxes.  Proposition 218 provides:  "No local government may *impose, extend, or increase any general tax* unless and until that tax is submitted to the electorate and approved by a majority vote.  A general tax shall not be deemed to have been increased if it is imposed at a

14

rate not higher than the maximum rate so approved. . . ."
(Cal. Const., art. XIII C, § 2, subd. (b), added by initiative
measure (Prop. 218, § 3, approved Nov. 5, 1996), italics added.)

"A 'general tax' is one 'imposed for general governmental
purposes' ([Cal. Const., art. XIII C], § 1, subd. (a)), which courts
have interpreted to mean a tax whose revenues are placed in the
taxing jurisdiction's general fund, thus making them available for
any and all governmental purposes.  (*Weisblat v. City of San
Diego* (2009) 176 Cal.App.4th 1022, 1039; *Howard Jarvis
Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178,
1185.)"  (*Chiatello v. City and County of San Francisco* (2010)
189 Cal.App.4th 472, 479, fn. 1.)  A "local government" is "any
county, city, city and county, including a charter city or county,
any special district, or any other local or regional governmental
entity."  (Cal. Const., art. XIII C, § 1, subd. (b).)

## II.

## What Is And Is Not in Dispute

There are several issues on which the parties agree.  It is
undisputed that the utility user tax is a "general tax" and the
City is a "local government" within the meaning of Propositions
62 and 218.  It also is undisputed that the 2007 ordinance was
adopted by the City Council without voter approval.  And, it is
undisputed that the 2007 ordinance eliminated the exemption for
telephone service not subject to the federal excise tax (26 U.S.C.
§ 4251 et seq.).

The crux of the parties' dispute is the effect of the 2007
ordinance—specifically, whether the elimination of the reference
to IRC section 4251 had the effect of "impos[ing]" a tax within the
meaning of Proposition 62, or of "impos[ing]," "extend[ing]," or
"increas[ing]" a tax within the meaning of Proposition 218.

15

Plaintiffs urge that the 2007 ordinance significantly expanded the kinds of telephone service subject to the utility user tax. They contend that when the voters approved Measure A in 2003, they "specifically voted *not* to tax services that were exempt from taxation under the Federal Excise Tax." Telephone service was taxable under the federal excise tax only if it "varie[d] in amount with the distance *and* elapsed transmission time;" and thus plaintiffs urge that as adopted, the utility user tax did not apply to cellular telephone service that "provide[d] local and long distance service for either a flat monthly fee or a charge that varie[d] with the elapsed transmission time for which the service [was] used." The 2007 ordinance applied the utility user tax to *all* telephone service, and thus it significantly expanded the tax's reach.

The City contends that the 2007 ordinance did not make any substantive change to the municipal utility user tax. It asserts that in 2003 the voters approved a 5.5 percent tax on all telephone service billed to City residents, and "[t]his 5.5% percent rate has remained the same for well over a decade and remains unchanged today." Accordingly, the City urges that while the 2007 ordinance made technical changes to the utility user tax, it did not extend the tax to any telephone service not already subject to it.

Before we turn to a consideration of the effect of the 2007 ordinance on the City's utility user tax, we briefly address an issue to which the parties devote significant portions of their appellate briefs—the distinctions between the terms "*impose*," "*extend*," and "*increase*," as used in Proposition 218. Although these terms are not synonymous, the differences between them need not detain us here. The key issue before us is whether the

16

2007 ordinance subjected Norwalk residents to a tax to which they were not already subject under the initiative approved by the voters in 2003.  If it did, we need not determine whether such tax was effectuated through an imposition, extension, or increase in order to decide that the 2007 ordinance violated Propositions 62 and 218—and if it did not, the distinctions between the terms are similarly immaterial.

We therefore now turn to the significant question before us: whether the 2007 ordinance established a *new* tax—i.e., whether it subjected telephone users or plans to a tax to which they previously had not been subject—or instead continued an *existing* tax already approved by the voters.

## III.

### As Enacted by the Voters in 2003, Measure A Imposed a User Tax on *All* Telephone Service

*A.      Legal Standards*

" 'When interpreting a [statute or a] provision of our state Constitution, our aim is "to determine and effectuate the intent of those who enacted the [statute or] constitutional provision at issue." [Citation.]  When, as here, the voters enacted the provision, their intent governs.  [Citation.] . . .' " (*Paland v. Brooktrails Township Community Services Dist. Bd. of Directors* (2009) 179 Cal.App.4th 1358, 1368–1369.)

To determine the voters' intent, "we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose.  (*Larkin v. Workers' Comp. Appeals Bd*. (2015) 62 Cal.4th 152, 157; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321 [when interpreting voter initiatives, ' "we begin with the text" '].)  We start by ascribing to words their ordinary meaning, while taking account

17

of related provisions and the structure of the relevant statutory and constitutional scheme.  (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293; *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 212 (*Bighorn*).)  If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials.  (*Larkin*, at p. 158.)  Moreover, when construing initiatives, we generally presume electors are aware of existing law.  (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 (*Lance W.*).)"  (*California Cannabis Coalition*, *supra*, 3 Cal.5th at pp. 933–934.)

> B. *When Norwalk Voters Passed Measure A in 2003, They Expressed a Clear Intent to Impose a 5.5 Percent Tax on All Telephone Service*

Prior to 2003, the City taxed telephone, electric, and gas utility services at the rate of 5.5 percent.  In 2003, the City Council agreed to allow the voters to ratify the City's continued collection of the utility user tax.  Therefore, on July 1, 2003, the City Council adopted Resolution No. 03-40, entitled "A Resolution of the City Council of the City of Norwalk Calling and Giving Notice of the Holding of Special Municipal Election on Tuesday, September 30, 2003, for the Submission to the Qualified Voters of the City a Proposed Ordinance to Ratify Continuing Collection of the City's Existing Utility User Tax."  The resolution called for the setting of a special election to obtain voter approval of the "*continued collection* of a utility user[] tax as a general tax at a rate not to exceed five and one-half percent."  This language suggests that the intent of the initiative was to continue the utility user tax as it then existed, by ratifying a 5.5 percent tax on all telephone service.

18

That the voters intended by passing Measure A to impose a 5.5 percent tax on *all* telephone service is supported by all of the following:

*Section A of Measure A:* Section A stated: "Chapter 3.36 of the Norwalk Municipal Code ('Code') entitled 'Utility User Tax' which applies a five and one-half percent (5 ½%) tax rate on *all telephone, electric and gas charges* in the City of Norwalk is hereby ratified and approved as set forth in Chapter 3.36 of the Code as of July 1, 2003." On its face, this language told the voters that what they were approving was a 5.5 percent tax on "*all* telephone . . . charges." (Italics added.)

*Section C of Measure A:* Section C stated: "It is the intent of the voters to apply the provisions of Chapter 3.36 of the Code to the fullest extent permitted by the law *to ratify the City's previous and continued collection of the tax.*" (Italics added.) Prior to the enactment of Measure A, the City already had been taxing all telephone service at the rate of 5.5 percent; thus, section C's reference to the "*continued* collection of the tax" (italics added) indicates that the voters intended to approve a continued 5.5 percent tax on all telephone service.

*Proposed Norwalk Municipal Code section 3.36.060, subsection A*: Subsection A of section 3.36.060 provided that "[t]here is imposed a tax on the amounts paid for *any* interstate, intrastate and international telephone communication services, including cellular telephone services . . . at the rate of five and one half percent of the charges made for such services." (Italics added.) The use of "any" when referring to "interstate, intrastate and international telephone communication services" suggests, again, that the voters intended to approve a 5.5 percent tax on all telephone service.

*Proposed Norwalk Municipal Code section 3.36.060, subsection D*: Subsection D exempted from the proposed

19

Municipal Code telephone charges "exempt from or not subject to the tax imposed under . . . Section 4251 of the Internal Revenue Code." "The adopting body is presumed to be aware of existing laws and judicial construction thereof." (*Lance W.*, *supra*, 37 Cal.3d at p. 890, fn. 11.) Thus, we are required to presume that in 2003, the voters were aware that the IRS then interpreted IRC section 4251 to apply to nearly all telephone service (with limited exemptions described above and not relevant to this discussion—see footnote 2, *ante*), and that the voters intended the utility user tax to have the same reach.

*Argument in Favor of Measure A:* The "Argument in Favor of Measure A" in the 2003 sample ballot told the voters as follows: "Norwalk residents pay a surcharge on telephone, gas, and electric bills. This surcharge, called a Utility Users Tax (UUT), is critical to maintaining the current levels of City services. This money is used for police protection, parks, recreation, senior citizen programming, street repairs and other vital services. Originally instituted at 8% in 1992 to combat a budget crisis, the City Council has gradually reduced the UUT to the current 5-1/2%. [¶] A recent California Supreme Court decision now requires voter approval for the City of Norwalk to continue collecting the UUT. [¶] . . . [¶] *Approving Measure A will not increase current taxes one penny; it just continues an existing fee.*"

Taken together, the language of the ballot initiative, the language of the proposed law, and the "Argument in Favor of Measure A" all compel the same conclusion—that the voters who enacted Measure A intended to impose a 5.5 percent tax on *all* telephone service billed to Norwalk residents.

20

## IV.
## The 2006 Change in Federal Law Did Not
## Retroactively Change the Meaning of
## Norwalk Municipal Code Section 3.36.060

Plaintiffs do not disagree that the voters who passed Measure A in 2003 would have understood that Measure A imposed a 5.5 percent tax on all telephone service billed to Norwalk residents. They nonetheless urge that Norwalk's tax of long distance and bundled (i.e., combined local and long distance) telephone services, both *before* and *after* 2007 was unlawful. We understand plaintiffs' theory to be as follows: (1) When Norwalk voters approved a municipal telephone tax in 2003, they exempted from taxation any telephone services not taxable under section 4251 of the IRC. (2) In 2005 and 2006, five federal courts held that IRC sections 4251 and 4252 did not permit the IRS to collect federal taxes on some long distance telephone service, and the IRS revised its tax collection practices accordingly. (3) The interpretation of federal tax law announced by federal courts in 2005 and 2006 meant that the City's municipal telephone tax, passed by the voters in 2003, had *never* permitted the collection of municipal taxes on all telephone service. (4) Therefore, when the City Council deleted the reference to federal tax law in 2007, it changed City law because it *for the first time* authorized the collection of municipal taxes on all telephone service.

Plaintiffs' unstated premise is that the 2006 change in the interpretation of a federal statute *retroactively* changed the meaning of the Norwalk Municipal Code. In other words, plaintiffs assert that when the federal courts in 2005 and 2006 limited the ability of the IRS to collect federal excise taxes under IRC sections 4251 and 4252, they altered the meaning of the

21

Norwalk Municipal Code—and did so not only prospectively, but retrospectively as well.  This appears to be the basis for plaintiffs' assertion that even prior to 2007, the City had been "unlawfully collecting a telephone users tax" on all telephone service "without voter approval or legal authorization."

Although this contention is the linchpin of plaintiffs' analysis, plaintiffs do not cite any legal authority to support it.  We therefore may deem the contention waived.  (E.g., *Orange County Water District v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 383 [" ' "Appellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " [Citation.]  "We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." ' [Citations.]"].)

Even if plaintiffs had not waived this argument, we would find it unpersuasive.  " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist *at the time of the reference and not as subsequently modified*, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary.' " (*Palermo v. Stockton Theatres* (1948) 32 Cal.2d 53, 58–59, italics added.)  Thus, because the Norwalk Municipal Code specifically referenced IRC section 4251, it incorporated that section's exemptions as they existed when the voters passed Measure A in 2003.

Further, as we have said, when interpreting a ballot initiative, our primary purpose is to ascertain and effectuate the voters' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796; *People v. Briceno* (2004) 34 Cal.4th 451, 459; *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.) Lacking clairvoyant powers, the Norwalk voters cannot have intended to incorporate an interpretation of a federal statute that *had not yet been promulgated.*

As discussed above, the central purpose of Measure A was to effectuate the "continued collection of a utility users tax as a general tax at a rate not to exceed five and one-half percent" in order to avoid "a fiscal emergency [that] now exists in the City due to the lack of municipal revenue necessary to provide an acceptable level of municipal services." We decline to conclude that the Norwalk voters intended in 2003 to incorporate federal law into Measure A in a manner that would have undermined the measure's central purpose.

Accordingly, we conclude that the 2006 change in the interpretation of federal law did not mean, as plaintiffs suggest, that Norwalk "had unlawfully been collecting a telephone users tax on services exempt from taxation under . . . the 2003 tax ordinance passed by the City's voters." In 2003, and 2007, and every year in between, Norwalk Municipal Code section 3.36.060 meant precisely what the voters understood and intended it to mean—that the 5.5 percent utility user tax applied to *all* telephone service.

## V.

### The 2007 Ordinance Therefore Did Not
### Impose a New Tax on Telephone Service

Having concluded that the 2006 change in federal law did not retroactively change the meaning of Norwalk Municipal Code

23

section 3.36.060, we now reach the final question raised by this appeal:  Whether the 2007 ordinance imposed, extended, or increased the utility user tax without voter approval.  It did not.  As we have discussed, *before* 2007, section 3.36.060 (as approved by the voters in 2003) applied a 5.5 percent utility user tax to all telephone service.  *After* the City Council adopted the 2007 ordinance, section 3.36.060 continued to apply a 5.5 percent utility user tax to all telephone service.  Accordingly, the 2007 ordinance did not "impose," "extend," or "increase" a general tax within the meaning of Propositions 62 or 218.[4]

## VI.
## Our Conclusion Is Consistent with
## *AB Cellular LA, LLC v. City of Los Angeles*

Plaintiffs urge that *AB Cellular LA, LLC v. City of Los Angeles* (2007) 150 Cal.App.4th 747 (*AB Cellular*) compels the conclusion that the 2007 ordinance constituted an unlawful increase in local taxes.  We disagree.

In *AB Cellular*, the Los Angeles City Council adopted an ordinance that, as applied, including through instructions issued by the city's tax and permit division, taxed fixed monthly cell

---

[4]     Although not relevant to the constitutional issue before us, we note that the City Council's action was specifically authorized by Measure A, which stated that that the City Council "is hereby authorized to amend any . . . provisions of Chapter 3.36 of the Code [other than the 5.5 percent tax rate] by three (3) affirmative votes of its members to, without limitation, carry out the general administrative purposes of Chapter 3.36 of the Code to reasonably implement the collection of the utility user tax through public utilities and other service suppliers as authorized in Chapter 3.36 of the Code."

24

phone fees, but not "airtime" fees—i.e., fees charged for the number of minutes during the billing period that customers used their cellular service to make phone calls. (*AB Cellular*, *supra*, 150 Cal.App.4th at p. 757.) Subsequently, after the passage of Proposition 218, the city issued new instructions directing cell phone providers to collect a tax on both fixed monthly fees and airtime charges. (*Ibid*.) The city projected that the revised instructions would increase 2003 tax revenues by $1 million and 2004 tax revenues by $4 million. (*Ibid*.)

Cell phone carriers filed a petition for writ of mandate, seeking a declaratory judgment that the revised instructions violated Proposition 218. (*AB Cellular*, *supra*, 150 Cal.App.4th at p. 757.) Both the trial court and the Court of Appeal agreed that the revised instructions were not permitted by Proposition 218. (*Id*. at p. 758.) The Court of Appeal explained that Proposition 218 required voter approval of all tax "increases," which included revisions in the methodology by which a tax is calculated if the revision results in an increased tax being levied on any person. "The word 'calculated' denotes the math behind a tax. The dictionary definition of 'revision' is 'alteration.' In practical terms, a tax is increased if the math behind it is altered so that either a larger tax rate or a larger tax base is part of the calculation." (*Id*. at p. 763, fn. omitted.) Accordingly, because the revised instructions changed the taxing methodology in a manner that increased city revenue without voter approval, they violated Proposition 218. (*Id*. at p. 767.)

Applying *AB Cellular*'s analysis to the present case compels the conclusion that the adoption of the 2007 ordinance did not violate Proposition 218. Under *AB Cellular*, a revision to the methodology by which a tax is calculated constitutes a tax

25

"increase" only if it increases the amount levied on taxpayers. The *AB Cellular* approach is a practical one:  It asks not simply whether a taxing agency has revised the methodology by which a tax is calculated, but also whether that revised methodology has resulted in a greater tax burden for taxpayers.  In the present case, although the 2007 ordinance changed the language of the section 3.36.060, it had no effect on the *amount* of the telephone tax paid by taxpayers—after 2007, as before, taxpayers paid a 5.5 percent user tax on all telephone service.  Thus, under the practical approach articulated in *AB Cellular*, the 2007 ordinance was not a tax increase.

## DISPOSITION

The judgment is affirmed.  The City is awarded its appellate costs.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:


LAVIN, J.


BACHNER, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.