Filed 3/17/21  Food & Water Watch v. Metropolitan Water Dist. Etc. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FOOD & WATER WATCH et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA et al., <br><br> Defendants and Respondents. | B297553 <br><br> Los Angeles County Super. Ct. No. BC720692 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed.

Law Office of Adam Keats, Adam Keats; Law Office of Roger B. Moore and Roger B. Moore for Plaintiffs and Appellants.

Hanson Bridgett, Adam W. Hofmann; Marcia Scully and Patricia J. Quilizapa for Defendant and Respondent Metropolitan Water District of Southern California.

Procopio, Cory, Hargreaves & Savitch, Gregory V. Moser and P. Jacob Kozaczuk; Mark J. Hattam for Respondent San Diego County Water Authority.

# INTRODUCTION

Food & Water Watch and Center for Food Safety (collectively, plaintiffs) are non-profit organizations who brought this reverse validation action challenging two resolutions adopted by Metropolitan Water District of Southern California (Metropolitan) concerning the agency's plan to purchase an interest in and help finance the since abandoned "California Waterfix" project. In the operative first amended complaint, plaintiffs assert the resolutions violate Propositions 13 and 26, as well as Metropolitan's contract with the State Water Project, because the resolutions might in the future require Metropolitan to raise water rates and property taxes without voter approval. Plaintiffs also assert the resolutions exceed the limits on Metropolitan's authority under the agency's District Act (Wat. Code Appen., § 109 et seq.) and the Joint Exercise of Powers Act (Gov. Code, § 6500 et seq.).

Plaintiffs appeal from a judgment of dismissal entered after the trial court sustained without leave to amend Metropolitan's and San Diego County Water Authority's (SDCWA) demurrers to the first amended complaint.[1] We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    The Challenged Resolutions

In mid-2018, the California Department of Water Resources (DWR) planned to construct the Waterfix project (Project), which would create new intakes on the east bank of the Sacramento River in the northern California Delta, new tunnels connecting those intakes to a new forebay, and two new 30-mile tunnels carrying water from that forebay to a new water

---

[1] SDCWA demurred to the first cause of action only.

pumping plant. Various water contractors throughout California had subscribed to about 67 percent of the Project's anticipated capacity. Metropolitan planned to purchase the Project's unsubscribed capacity interest.

In July 2018, Metropolitan's board of directors adopted Resolutions 9243 and 9244 (collectively, Resolutions). Resolution 9243 authorized Metropolitan to enter into a master agreement with DWR and a joint powers authority formed by Metropolitan (Capacity Interest JPA) to purchase the unsubscribed capacity interest in the Project. As part of the agreement, the Capacity Interest JPA would make payments to DWR to fund the Project's construction. To finance its payments to DWR, the Capacity Interest JPA would issue "one or more series of revenue bonds."

Metropolitan, in turn, would enter into an "installment purchase agreement" with the Capacity Interest JPA through which the joint powers authority would transfer its interest in the Project to Metropolitan in exchange for a series of installment payments. Metropolitan would secure its obligation to the Capacity Interest JPA through a lien on the agency's water revenues. As part of the resolution, Metropolitan could sell the unsubscribed capacity interest to other water agencies.

Resolution 9243 also authorized Metropolitan's general manager "to do any and all things necessary" to make arrangements for the purchase of the Project's unsubscribed capacity interest and to "negotiate, execute, and deliver[] one or more agreements and documents necessary or advisable to carry into effect" the purchase. The resolution precluded Metropolitan from entering into any agreement that would commit the agency to pay for more than 64.6 percent of the Project's estimated costs.

Resolution 9244 authorized Metropolitan to participate in the formation of a "Financing JPA" with other water agencies that agreed to help finance the Project. The Financing JPA could

3

issue its own bonds and help DWR issue bonds to finance the Project. To protect purchasers of DWR's bonds, the participating water agencies could directly purchase DWR's bonds or other property or enter into one or more debt service agreements. If DWR defaulted on its payment of debt service on its bonds, DWR would agree to transfer to the Financing JPA, or to another designated entity, DWR's right, title, and interest in the Project.

Resolution 9244 also authorized Metropolitan to invest in certain DWR bonds. The resolution granted Metropolitan's general manager the authority "do any and all things necessary" to effectuate the agency's participation in the Financing JPA, including negotiating, executing and delivering any necessary agreements.

**2.      The Lawsuit**

In early September 2018, plaintiffs filed a reverse validation action against Metropolitan under Code of Civil Procedure section 860 et seq. and Government Code section 53511 challenging the validity of the Resolutions. In the operative first amended complaint, plaintiffs complain that the Resolutions authorize Metropolitan to incur exorbitant debt which may exceed the estimated costs of the Project and that Metropolitan may have no lawful means of repaying in the future. One reason the costs may exceed expectations, plaintiffs claim, is because Metropolitan had yet to execute any master agreements relating to the purchase of the Project's unsubscribed capacity.

The gravamen of plaintiffs' claims boils down to this: (1) Metropolitan may raise its water rates and property taxes in the future to ensure the agency has sufficient revenue to secure any debt related to its purchase of an interest in the Project; and (2) Metropolitan may raise its rates and increase property taxes without first obtaining voter approval in violation of Propositions

4

13 and 26. Plaintiffs do not allege, however, that Metropolitan has imposed, let alone approved, any water rate or property tax increases as a result of the Resolutions. Nor do the Resolutions, which are attached to the first amended complaint, mention any plan by Metropolitan to increase water rates or property taxes.

The operative first amended complaint asserts four causes of action. The first cause of action seeks to invalidate the Resolutions on the ground that they violate Proposition 26. Specifically, plaintiffs allege the Resolutions are unlawful because they authorize Metropolitan's general manager to raise water rates in the future without first obtaining voter approval. The second cause of action states a similar claim: the Resolutions authorize the agency's general manager to increase property taxes in the future without voter approval in violation of Proposition 13. The third cause of action alleges the Resolutions authorize property tax increases and "issuance of charges that may be prohibited" by Metropolitan's contract with the State Water Project. Finally, the fourth cause of action alleges— without specifying how—the Resolutions authorize Metropolitan to engage in conduct that exceeds the limits on its authority under the District Act and the Joint Exercise of Powers Act.

Metropolitan demurred to the entire first amended complaint, and SDCWA demurred to the pleading's first cause of action.[2] The court sustained both demurrers without leave to amend.

As to the first and second causes of action, the court found the claims were not ripe. Specifically, the court found the

_____

[2] The reverse validation action was brought against Metropolitan and all persons interested in Metropolitan's authorization of the Resolutions. Although SDCWA is not named as a defendant in the original or the first amended complaint, it filed demurrers to both complaints in its capacity as an interested person.

5

Resolutions establish only a framework through which Metropolitan could in the future increase water rates or property taxes. Plaintiffs did not allege, however, that Metropolitan approved or enacted any water rate or property tax increase without voter approval. Thus, plaintiffs failed to state a claim for violation of Proposition 13 or 26.

As to the third cause of action, the court found plaintiffs failed to plead a breach of Metropolitan's contract with the State Water Project. Specifically, plaintiffs did not allege Metropolitan assessed any taxes, imposed any charges, or issued any bonds in a manner that would violate the contract. And finally, for the fourth cause of action, the court found plaintiffs failed to plead with sufficient specificity the applicable statutory sections and manner of violations that form the basis of their claim.

In April 2019, the court entered a judgment dismissing plaintiffs' lawsuit. Plaintiffs timely appealed.

### 3.    DWR Abandons the Project

In early May 2019, DWR's director rescinded the agency's approval of the Project. A few days later, DWR approved a resolution rescinding all of its prior authorizations to issue bonds to fund the Project.

In June 2019, at a meeting of Metropolitan's board of directors, Metropolitan's general manager stated that the Resolutions were "void" and "mooted" by DWR's decision to nix the Project since the Resolutions only authorized him to negotiate and execute agreements related to the Project. The general manager informed the board that it would have to issue new authorizations before Metropolitan could participate in, and spend money related to, any new project proposed by DWR.

In December 2020, Metropolitan staff prepared a letter advising the agency's board of directors to approve funding for DWR's new, single-tunnel project to convey water from the

6

California Delta. That same month, Metropolitan's board of directors adopted the staff's recommendation to approve funding for part of DWR's new California Delta project.[3]

## DISCUSSION

### 1. Standard of Review

We independently review an order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We liberally construe the complaint's allegations, assuming the truth of all properly pled facts and matters that are judicially noticeable. (*Ibid; Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.) "In addition, other relevant matters which are properly the subject of judicial notice may be treated as having been pled." (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842.)

### 2. The appeal is moot.[4]

Metropolitan contends that plaintiffs' appeal challenging the order sustaining Metropolitan's and SDCWA's demurrers without leave to amend is moot since DWR has formally abandoned the Project, rendering the Resolutions null and void. We agree.

"California courts will decide only ' "justiciable controversies." ' [Citation.] A moot case is one in which there may have been an actual or ripe controversy at the outset, but due to

---

[3] We grant Metropolitan's request for judicial notice of the staff's letter and the minutes from the meeting at which the board of directors approved the staff's recommendation.

[4] Before briefing was complete, we denied Metropolitan's motion to dismiss plaintiffs' appeal as moot.

intervening events, it no longer presents a context in which the court can grant effectual relief." (*Placer Foreclosure, Inc. v. Aflalo* (2018) 23 Cal.App.5th 1109, 1112–1113.)

Plaintiffs' appeal is moot because we cannot grant any effective relief. As our factual summary shows, Metropolitan issued the Resolutions for the specific purpose to help fund the construction of, and the agency's purchase of an interest in, the Project. Nothing in the Resolutions indicate they authorize Metropolitan to spend or otherwise incur debt related to any other project or activity. As Metropolitan's general manager acknowledged at the agency's June 2019 board meeting, the Resolutions only authorized him to negotiate and execute agreements related to the Project and Metropolitan would need to issue new resolutions to authorize spending related to any new project proposed by DWR. Indeed, since that meeting, DWR has proposed a new California Delta project and Metropolitan has approved a recommendation by its staff to pursue financing, through terms different from those specified in the Resolutions, related to that project. Thus, even if we were to decide the appeal in plaintiffs' favor and they ultimately were to succeed in the trial court, they could obtain no effective relief because the Resolutions are essentially null and void.

In any event, as we explain below, the court properly sustained without leave to amend Metropolitan's demurrer to the entire first amended complaint and SDCWA's demurrer to the complaint's first cause of action.

3.      **The court properly sustained the demurrers as to the first and second causes of action.**

Plaintiffs contend the court erred in sustaining the demurrers as to the first amended complaint's first and second causes of action. According to plaintiffs, any claim asserting the Resolutions violate Proposition 13 or 26 must be brought as a

8

reverse validation action because once the validation period expires, any future decision by Metropolitan to raise water rates or to increase property taxes to pay its debt obligation under the Resolutions will be insulated from judicial attack. This argument lacks merit.

Even if we were to assume the validation statutes apply to the Resolutions,[5] plaintiffs' claims that the Resolutions authorize Metropolitan to incur unlawful debt based on future violations of

---

[5] Among other things, the validation statutes allow "interested persons" to bring an action challenging the validity of certain government actions, including a local public agency's "bonds, warrants, contracts, obligations or evidences of indebtedness" (Gov. Code, § 53511), which includes the authorization of bonds. (Code Civ. Proc., § 864.) If the action is not challenged within 60 days, it becomes "immune from attack whether it is legally valid or not." (*Davis v. Fresno Unified School District* (2020) 57 Cal.App.5th 911, 928.)

On their face, the Resolutions only authorize Metropolitan's general manager to begin negotiating agreements through which Metropolitan could incur debt in the future related to the financing of the Project and which would allow the Capacity Interest JPA to issue bonds to secure its payments to DWR. The Resolutions do not authorize Metropolitan to issue any bonds, and nothing in the Resolutions constitutes an agreement between Metropolitan and any other entity. Nor do the Resolutions indicate that any agreement had been negotiated at the time they were issued. Indeed, in their first amended complaint, plaintiffs complain that the Resolutions are flawed because Metropolitan has *yet* to negotiate or enter into any master agreements related to the purchase of the Project's unsubscribed capacity interest. In short, the Resolutions only: (1) state Metropolitan's intent to purchase an interest in, and help finance construction of, the Project; and (2) authorize Metropolitan's general manager to begin negotiating with other entities to effectuate those goals. Thus, it appears the validation statutes don't apply to the Resolutions. We need not decide whether the statutes apply, however, because plaintiffs' first and second causes of action are not ripe.

9

Propositions 13 and 26 are not ripe for judicial determination. Before a claim may be adjudicated it must present a justiciable controversy. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 169 (*Pacific*).) To be justiciable, a claim must be, among other things, "ripe." (*Ibid.*)

For a claim to be ripe, the " 'controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Pacific, supra*, 33 Cal.3d at p. 171.) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Ibid.*) In other words, " 'the judgment must decree, not suggest, what the parties may or may not do.' [Citation.]" (*Ibid.*) The ripeness doctrine applies to validation actions. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 66 (*Stewart*).)

Courts apply a two-pronged test to determine if a claim is ripe: "(1) whether the dispute is sufficiently concrete so that declaratory relief is appropriate; and (2) whether the parties will suffer hardship if judicial consideration is withheld." (*Stewart, supra*, 126 Cal.App.4th at p. 64.) Relevant here, courts will decline to adjudicate a claim under the first prong " 'if "the abstract posture of [the case] makes it difficult to evaluate … the issues" [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a "contrived inquiry [citation]." ' " (*Ibid.*)

The first and second causes of action assert that the Resolutions are invalid because they will in the future require Metropolitan to raise water rates and property taxes without

10

voter approval in violation of Propositions 13 and 26. The first and second causes of action don't assert any other legal bases for invalidating the Resolutions. Because any violation of Proposition 13 or 26 stemming from Metropolitan's adoption of the Resolutions is purely speculative at this point, the first and second causes of action are not ripe.

In 1978, California voters passed Proposition 13, which added article XIII A to the California Constitution. (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*Redding*).) Relevant here, Proposition 13 limits the amount of any "ad valorem tax on real property" at one percent unless, among other exceptions, two-thirds of the voting electorate approve the imposition of ad valorem taxes or special assessments to pay the interest and redemption charges on the "[b]onded indebtedness for the acquisition or improvement of real property" incurred on or after July 1, 1978. (Cal. Const., art. XIII A, § 1, subd. (b)(2).) Proposition 13, therefore, limits "local government authority to increase property taxes." (*Redding*, at p. 10.)

In 1996, voters passed Proposition 218, which added articles XIII C and XIII D to the Constitution. (*Redding*, *supra*, 6 Cal.5th at p. 10.) Like parts of Proposition 13, Proposition 218 limits local governments' authority "to assess taxes and other charges on real property." (*Ibid.*) It also restricts the methods by which "local governments can exact revenue using fees and taxes not based on real property value or ownership." (*Ibid.*)

In 2010, voters passed Proposition 26, which was designed to curb a common practice among local governments to exact new property taxes by disguising them as "fees." (*Redding*, *supra*, 6 Cal.5th at p. 11.) To that end, Proposition 26 amended article XIII C of the Constitution by broadly defining the term "tax" to include "any levy, charge, or exaction of any kind imposed by a

local government." (Cal. Const., art. XIII C, § 1, subd. (e); see also *Redding*, at p. 11.) Proposition 13 excepted from its definition of a "tax" several different forms of charges, fines, and assessments, including "[a] charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product." (Cal. Const., art. XIII C, § 1, subd. (e)(2).)

Important here, a taxpayer cannot bring a claim for violation of Proposition 13 or 26 until the public agency at issue actually imposes the challenged tax increase, either directly or through the imposition of a new fee or a fee increase that qualifies as a tax. (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 368.) In other words, a claim for violation of the Constitution's prohibition against local governments assessing taxes without voter approval is not ripe until a new tax or a tax increase has been enacted or imposed. (*Webb v. City of Riverside* (2018) 23 Cal.App.5th 244, 258–261 [plaintiff failed to state a claim for violation of Constitution's limitations on imposition of taxes because she did not allege the city imposed any tax or rate increase].)

The Resolutions are silent as to whether they will require Metropolitan to raise water rates or property taxes to help fund the investment the agency had planned to make in the Project. Although Resolution 9243 states that Metropolitan would secure its obligation to make installment payments to fund its investment through a lien on Metropolitan's water revenues, it does not specify how the agency would secure funding for those payments. Nor does it state that the agency has increased, or will increase, water rates or property taxes to secure the lien on its water revenues. Most importantly, while plaintiffs allege that Metropolitan *will* raise its water rates or property taxes in the

future to fund its obligations under the Resolutions and could do so without first obtaining voter approval, plaintiffs don't allege, nor do they claim on appeal, that Metropolitan has imposed any new property taxes, increased existing property taxes, or increased its water rates as a consequence of approving the Resolutions. (See *Gonzalez v. City of Norwalk* (2017) 17 Cal.App.5th 1295, 1312–1314 [because city's local ordinance did not impose, extend, or increase a tax, court properly sustained demurrer with respect to claim for violation of the state Constitution's limitations on imposition of taxes by a public agency].) Any claim that Metropolitan will increase water rates or property taxes in the future without first obtaining voter approval is, therefore, entirely speculative. Consequently, the first and second causes of action asserted in the first amended complaint are not ripe for judicial determination. (*Stewart, supra*, 126 Cal.App.4th at p. 64.)

In passing, plaintiffs claim the Resolutions are also unlawful because they authorize Metropolitan to incur an amount of debt the agency has no lawful means to repay. Plaintiffs fail, however, to point to any authority outside of Propositions 13 and 26 to support this argument. Because we already rejected plaintiffs' contentions concerning the application of Propositions 13 and 26 to their first two causes of action, and because plaintiffs cite no additional authority to show those claims are ripe, we need not address this argument any further. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 (*Dietz*) [appellant's failure to support claim with reasoned argument and citations to authority permits the reviewing court to treat that claim as waived].)

## 4. Plaintiffs failed to show the court erred in sustaining Metropolitan's demurrer as to the third cause of action.

In their briefs, plaintiffs don't include any arguments discussing why the court erred in sustaining Metropolitan's demurrer as to the third cause of action for violation of Metropolitan's contract with the State Water Project. Although plaintiffs briefly discuss the underlying contract in an attempt to show why Metropolitan will increase property taxes in the future without voter approval, they fail to provide any argument addressing why the first amended complaint states a claim that the Resolutions violate that contract.

It is a fundamental principle of appellate review that a challenged judgment or order is presumed correct and all presumptions must be indulged in favor of its correctness. (*Dietz*, *supra*, 177 Cal.App.4th at p. 799.) Accordingly, the appellant bears the burden to affirmatively demonstrate why the challenged judgment or order is wrong and should be reversed. (*Ibid*.) As part of that burden, the appellant must provide reasoned argument and citations to relevant legal authority that support that argument. (*Ibid*.) It is not enough to simply assert a judgment is wrong. " ' "Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] … waived." [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]' [Citation.]" (*Ibid*.)

Because plaintiffs don't provide any reasoned argument discussing why the court erred in sustaining Metropolitan's demurrer as to the third cause of action asserted in the first

14

amended complaint, they have waived any challenge to the court's ruling on that claim. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 (*Behr*) [failure to brief issue constitutes a waiver or abandonment of the issue on appeal].)

**5.      Plaintiffs have not shown the court erred in sustaining Metropolitan's demurrer as to the fourth cause of action.**

Plaintiffs also have failed to show the court erred in sustaining Metropolitan's demurrer as to the fourth cause of action. That claim asserts in general terms that the Resolutions exceed Metropolitan's authority under the agency's District Act and the Joint Exercise of Powers Act. To the extent the fourth cause of action asserts a violation of the Joint Exercise of Powers Act, plaintiffs fail to cite any authority that would support a claim brought under that statute let alone discuss that statute at any length. Consequently, plaintiffs have waived any claim that the court erred in sustaining Metropolitan's demurrer to the fourth cause of action insofar as it asserts the Resolutions violate the Joint Exercise of Powers Act. (*Behr*, *supra*, 193 Cal.App.4th at p. 538.)

In addition, plaintiffs haven't shown the court erred in sustaining Metropolitan's demurrer as to the fourth cause of action to the extent it asserts a violation of Metropolitan's District Act. In their briefs, plaintiffs contend the Resolutions violate section 200 of the District Act (Section 200) because that provision requires Metropolitan to obtain approval from its voters before incurring bonded indebtedness related to certain types of spending that will exceed the agency's ordinary annual income and revenue. Plaintiffs misconstrue Section 200.

That provision provides: "Whenever the board, by ordinance adopted by a vote of a majority of the total vote of the board, determines that the interests of the district and the public

interest or necessity demand the acquisition, construction or completion of any public improvement or works of the district, or the payment of funds for any part of the capital costs of any public improvement or works of this state from which service is to be provided to the district, or the incurring of any preliminary expenses, or any combination of such purposes, necessary or convenient to carry out the objects or purposes of the district, the cost of which will be too great to be paid out of the ordinary annual income and revenue of the district, the board *may order* the submission of the proposition of incurring bonded indebtedness*, for the purposes set forth in such ordinance, to the qualified voters of the district, at an election held for that purpose." (Wat. Code Appen., § 109-200, italics added.)

As the italicized language shows, Section 200 is permissive in nature. (*Compton College Federation of Teachers v. Compton Community College Dist.* (1982) 132 Cal.App.3d 704, 711–712 [for purposes of statutory construction, the word "may" is generally construed as permissive].) That is, it permits, but does not require, Metropolitan to submit to its voters a proposition to incur qualifying bonded indebtedness. Plaintiffs cite no other authority to support the proposition that Section 200 requires Metropolitan to obtain voter approval before incurring qualifying bonded indebtedness. (*Compton College*, at p. 712 [a construction of "may" to be mandatory is proper " ' "only where sense of entire enactment requires it or it is necessary to carry out legislative intention" ' "].) Accordingly, plaintiffs have not shown the court erred when it found they failed to state a claim for violation of Section 200.

## 6.    The court properly sustained the demurrers without leave to amend.

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the plaintiffs can amend their complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the defect can be cured, "the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid*.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.) Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

Plaintiffs did not argue below, nor do they argue on appeal, that they could amend the first amended complaint to plead additional facts to state claims for violations of Propositions 13 and 26, Metropolitan's contract with the State Water Project, Metropolitan's District Act, or the Joint Exercise of Powers Act. Plaintiffs, therefore, have not met their burden to show the court abused its discretion in sustaining Metropolitan's and SDCWA's demurrers without leave to amend.

## DISPOSITION

The judgment is affirmed. Metropolitan Water District of Southern California and San Diego County Water Authority shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.