Filed 8/28/25 Modified and Certified for Pub. 9/19/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SOUTHWEST JET FUEL CO., | F087656, F087657 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CECG01224) |
| v. | |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, | **OPINION** |
| Defendant and Appellant; | |
| CITY OF ONTARIO, et al., | |
| Interveners and Appellants. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao and Douglas J. Beteta, Deputy Attorneys General, for Defendant and Appellant.

Best Best & Krieger, Jeffrey V. Dunn, Dean S. Atyia, Anya Kwan, and Cindy Z. Shi, for Interveners and Appellants City of Ontario and San Bernardino County Transportation Authority.

Olson Remcho, Margaret R. Prinzing, Inez Kaminski, and Emily Uchida for Amici Curiae County of Los Angeles and County of Sacramento on behalf of Defendant, Interveners and Appellants.

Vallejo Antolin Agarwal Kanter, Edwin P. Antolin, Monty Agarwal, and Rachel L. Chanin, for Plaintiff and Respondent.

-ooOoo-

This case concerns county taxes on jet-fuel sales. In 1955, the California Legislature authorized counties to impose a tax on "the sale of all tangible personal property sold … in the county." (Stats. 1955, ch. 1311, § 1; see Rev. & Tax. Code,[1] § 7202, subd. (a).) The Legislature's authorization required counties to comply with "Part 1.5 of Division 2 of the Revenue and Taxation Code" and to "incorporate[] provisions identical to those of the Sales and Use Tax Law of the State of California[.]" (Stats. 1955, ch. 1311, § 1.)

Each county involved in this litigation did, in 1956, adopt and impose a compliant sales tax. At the time, notwithstanding a tax on "the sale of all tangible personal property," jet-fuel sales were "exempt" from taxation.[2] In 1971, the Legislature pared down the exemption to apply against only "80 percent of the gross receipts from the sale of" jet fuel—in other words, 20 percent of sales were taxed.[3] (Stats. 1971, ch. 1400, § 10.)

---

[1] All undesignated statutory references are to the Revenue and Taxation Code.

[2] As originally enacted, the exemption read as follows: "Purchases of property by operators of common carriers and waterborne vessels to be used or consumed in the operation of such common carriers or waterborne vessels, principally outside a city, city and county or county are exempt from the tax." (Stats. 1955, ch. 1311, § 1.)

[3] The 1971 amendment to the Bradley-Burns Act required adoptive sales-tax ordinances to include "[a] provision that 80 percent of the gross receipts from the sale of property to operators of common carriers and waterborne vessels to be used or consumed in the operation of such common carriers or waterborne vessels, principally outside a city, city and county or county are exempt from the tax." (Stats. 1971, ch. 1400, § 10.)

California voters subsequently passed Proposition 62, enshrining in the Government Code the electorate's right to vote on local taxation. (See Gov. Code, §§ 53722 & 53723.) Five years later, the Legislature revisited the jet-fuel-sales-tax exemption, this time eliminating it altogether.[4] (Sen. Bill No. 180 (1991-1992 Reg. Sess.) § 10.)

Southwest Jet Fuel Company (Southwest), having paid a sales tax on all jet-fuel sales for the relevant period, filed the instant tax refund claim. Southwest argued it need only pay taxes on 20 percent of its jet-fuel sales. The argument was based on the fact the Legislature's latest revision to the jet-fuel-sales-exemption was neither submitted to the electorate nor duly adopted by the literal implementing local-sales-tax ordinances. The California Department of Tax and Fee Administration (CDTFA) and City of Ontario and San Bernardino County Transportation Authority (collectively, Government) claimed the revision eliminating an exemption for jet-fuel sales was automatically incorporated, by state and local law, into the county ordinances, and Proposition 62 did not apply. The trial court sided with Southwest.

We conclude Proposition 62 does not apply to the present controversy, and the county ordinances at issue automatically and lawfully incorporated the Legislature's elimination of the jet-fuel sales exemption. The revised exemption of certain property under a sales tax that otherwise taxes "all" sold "tangible personal property," and authorized by duly enacted local legislation predating Proposition 62, is not itself a tax. Accordingly, Proposition 62 is inapplicable and we will reverse the judgment.

---

[4] The 1991 amendment to the Bradley-Burns Act, eliminating an exemption for jet-fuel sales, required adoptive sales-tax ordinances to include "[a] provision that there is exempted from the sales tax 80 percent of the gross receipts from the sale of tangible personal property, other than fuel or petroleum products, to operators of aircraft to be used or consumed principally outside the county in which the sale is made and directly and exclusively in the use of such aircraft as common carriers of person or property under the authority of the laws of this state, the United States, or any foreign government." (Sen. Bill No. 180 (1991-1992 Reg. Sess.) § 10.)

## BACKGROUND

The Legislature enacted the Bradley-Burns Uniform Local Sales and Use Tax Law in 1955 (Bradley-Burns). (§ 7200 et seq.) "Before the law's enactment, different [localities] imposed different sales and use taxes that had different collection schemes. [Citation.] In [the] Bradley-Burns [Act], 'the Legislature enacted a uniform local sales and use tax law' to replace this scheme. [Citation.] It also created incentives to convince counties and cities to participate in the new taxation law. Counties, which previously lacked the ability to impose sales and use taxes, would benefit through new ' "authority to impose sales and use taxes as a means of raising additional revenue." ' [Citation.] Cities, in turn, would benefit through ' "a plan of state administration which w[ould] relieve them from operating collection systems of their own." ' " (*Cultiva La Salud v. State of California* (2023) 89 Cal.App.5th 868, 879 (*Cultiva*).)

The Bradley-Burns Act "imposed elaborate conditions on the exercise of [its] power: [for example,] the Legislature itself fixed the rate of the tax [citations], prescribed both general and specific provisions of the taxing ordinance [citations], mandated a series of tax exemptions and credits [citations], and required the local governments to contract with the [CDTFA] to administer and collect the tax at the local governments' expense [citations]. The Legislature added or amended many of these conditions, moreover, long after its original grant of this taxing power to local governments." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 249 (*Guardino*).) It also required any adoptive ordinance implementing a sales and use tax to include "[a] provision that all amendments subsequent to the effective date of Part 1 of Division 2 of [the Revenue and Taxation Code] relating to sales tax and not inconsistent with [Part 1.5 of Division 2 of the Revenue and Taxation Code], shall automatically become a part of the sales tax ordinance of the county."[5] (Stats. 1955, ch. 1311, § 1.)

---

[5] As originally enacted, the Bradley-Burns Act only applied to county government. "Over time, the Legislature expanded the scope of [the] Bradley-Burns

4.

Each county involved in this case, in 1956, enacted enabling ordinances imposing sales and use taxes. The imposed sales tax applied to "the sale of all tangible personal property sold at retail[.]" Each county's ordinance included, and still includes, the proviso "[a]ll amendments of the Revenue and Taxation Code [postdating enactment] which relate to the sales and use tax and which are not inconsistent with Part 1.5 of Division 2 of the Revenue and Taxation Code shall automatically become a part of" the local ordinance. (Alameda County Ordinance No. 196 N.S., § 7-252; Los Angeles County Ordinance No. 6882, § 7; Orange County Ordinance No. 797, § 8; Sacramento County Ordinance No. 526, § 8; San Bernardino Ordinance No. 790, § 8; San Diego Ordinance No. 1583, § 8; Santa Clara Ordinance No. NS-13, § VIII; see Alameda County Code, § 2.08.190; Los Angeles County Code, § 4.68.090; Orange County Code, § 1-4-70; Sacramento County Code, § 3.04.070; San Bernardino County Code, § 14.0201, subd. (h); San Diego County Code, § 22.107; Santa Clara County Code, § A30-18.)

The original Bradley-Burns Act specifically exempted from taxation "[p]urchases of property by operators of common carrier and waterborne vessels to be used or consumed in [such] operation[.]" (Stats. 1955, ch. 1311, § 1.) The Legislature amended this exemption in 1971, reducing it to an "80 percent" exemption. (Stats. 1971, ch. 1400, § 10.) Then, in 1991, it revised the exemption to exclude from it "the sale of … fuel or petroleum products[.]" (Sen. Bill No. 180 (1991-1992 Reg. Sess.) § 10.)

California's voters, in the meantime, passed Proposition 62 in 1986. Proposition 62 added Government Code sections 53720 to 53730. Pertinent here, Government Code section 53723 states "[n]o local government … may impose any general tax unless and until such general tax is submitted to the electorate of the local

[Act] and made city participation in the law—once voluntary—mandatory for those seeking to impose sales and use taxes." (*Cultiva, supra,* 89 Cal.App.5th at p. 880.)

5.

government … and approved by a majority vote of the voters voting in an election on the issue."[6]

The official 1986 Ballot Pamphlet entitled Proposition 62 as "Taxation. Local Governments and Districts." It explains the title was "[p]repared by the Attorney General," and the Attorney General's summary begins by stating the initiative "[e]nacts statutes regarding new or increased taxation by local governments and districts." "Analysis by the Legislative Analyst," on the very same page, informs voters "[t]his measure establishes new requirements for the adoption of new or higher general and special taxes by local agencies." It concludes, "This measure would prevent the imposition of new or higher general taxes without voter approval by local agencies other than charter cities." Proponents' argument in favor, also published in the pamphlet, echoed the concept "Proposition 62 requires new or increased local, general purpose taxes be approved" by the relevant electorate.

Consistent with the 1991 Legislative amendment to the Bradley-Burns Act, the counties here began collecting a full sales-tax on jet fuel. Southwest eventually sought a tax refund, claiming it owed a tax only at the 1971 jet-fuel exemption level, i.e., a tax on 20% of its jet-fuel sales. Its theory was based on the undisputed fact no electorate approved the 1991 amendment eliminating the jet-fuel sales exemption—an alleged "violation of Proposition 62."

Specifically, Southwest asserted "[n]one of the [c]ounties had approved an enabling ordinance by a two-thirds vote of all members of the legislative body of the county and submitted the increased imposition to the electorate and obtained the approval

---

[6] A general tax is a tax "imposed for general governmental purposes." (Gov. Code, § 53721.)

6.

of a majority of the voters."[7]  It also sought declaratory relief absolving it from paying the full tax in future.

CDTFA opposed the refund.  Southwest eventually moved for summary judgment.  San Bernardino County Transportation Authority and City of Ontario sought intervention, which was granted.  CDTFA subsequently moved for judgment on the pleadings.

The trial court judicially noticed various "public statutory law, regulations, legislative enactments, legislative history, and related official acts or records" submitted to it by the parties.  It then denied CDTFA's motion for judgment.

Southwest ultimately prevailed.  The trial court granted Southwest's motion for summary judgment.  It first concluded the automated incorporation of amendments to local ordinances applied only to Part 1 of Division 2 of the Revenue and Taxation Code, not to Part 1.5 of the same division.  It then found the "counties at issue … failed to pass a local ordinance" implementing the Legislature's 1991 revision to the jet-fuel sales exemption.  Accordingly, the court held "the Bradley-Burns [Act]" did not "permit[] the state to make an end run around the [constitutional] requirement that local entities impose their own sales taxes[.]"

Judgment was ordered in Southwest's favor, totaling approximately $11,000,000.  The judgment included declaratory relief, declaring Southwest need only "pay [future-jet-fuel-sales] taxes in accordance with the previously imposed 20% tax."

## DISCUSSION

Two questions of law are presented.  One, did the county sales-tax ordinances in this case automatically incorporate the 1991 Legislature's revision eliminating a local sales-tax exemption for certain jet-fuel sales?  If the answer is "yes," then did the electorate's right to vote on taxes pursuant to Proposition 62 apply to the automatically

---

[7] See Government Code section 53724.

incorporated revision?  Based on the following, we conclude the county sales-tax ordinances did automatically incorporate the eliminated exemption and Proposition 62 did not afford the electorate the right to vote on the elimination.

## I.  California Taxation

"The California Constitution, as amended by a series of voter initiatives, places limitations on the authority of state and local governments to collect revenue through taxes, fees, charges, and other types of levies."  (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1197.)  "From the state's founding, the Legislature has had broad authority to levy taxes."  (*Legislature of State of California v. Weber* (2024) 16 Cal.5th 237, 261 (*Weber*).)

"[T]he 1849 Constitution directed the Legislature to 'restrict' local governments' powers of taxation [citation], while the 1879 Constitution prohibited the Legislature from imposing taxes on local governments or their inhabitants for 'municipal purposes'  …. 'Generally,' however, 'the Legislature is supreme in the field of taxation, and the provisions on taxation in the state Constitution are a limitation on the power of the Legislature rather than a grant to it.'  [Citations.]  In describing article XIII, section 24, subdivision (a), which was part of the original 1879 Constitution and declares that '[t]he Legislature may not impose taxes for local purposes but may authorize local governments to impose them,' [the Supreme Court has said this provision operates as 'a restriction on the Legislature's otherwise *plenary power of taxation*' under the California Constitution."  (*Weber, supra,* 16 Cal.5th at pp. 261-262; Cal. Const., art. XIII, § 24(a).)

"A grant of authority from the Legislature 'is an essential prerequisite to all local taxation, because local governments have no inherent power to tax.' "  (*Howard Jarvis Taxpayers Assn. v. Bay Area Toll Authority* (2020) 51 Cal.App.5th 435, 455.)  "The 'Legislature's authority to grant taxing power to local governments … includes the authority to prescribe the terms and conditions under which local governments may exercise that power[.]' "  (*Weber, supra,* 16 Cal.5th at pp. 262-263.)  "If the local

government chooses to exercise that power, the Legislature may require it to take several steps in order to impose the tax." (*Guardino, supra,* 11 Cal.4th at p. 250.)

"For example, in authorizing local governments to levy local sales and use taxes," i.e., the Bradley-Burns Act, "the Legislature imposed elaborate conditions on the exercise of that power: … the Legislature itself fixed the rate of the tax (... §§ 7202, subd. (a), 7203), prescribed both general and specific provisions of the taxing ordinance (… §§ 7202, subds. (b)–(e), 7203, subds. (a)–(b)), mandated a series of tax exemptions and credits (… §§ 7202, subds. (f)–(h), 7202.5, 7203, subds. (c)–(e)), and required the local governments to contract with the State Board of Equalization to administer and collect the tax at the local governments' expense (… §§ 7202, subd. (d), 7204, 7204.3). The Legislature added or amended many of these conditions, moreover, long after its original grant of this taxing power to local governments." (*Guardino, supra,* 11 Cal.4th at p. 249.)

## II. Statutory Interpretation

"In interpreting a voter initiative …, we apply the same principles that govern the construction of a statute." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) "Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the plain meaning of the measure. [Citations.] '[T]he plain meaning rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " [Citation.] [¶] "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] The intent of the law prevails over the letter of the law, and 'the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Id.* at pp. 1276-

9.

1277.)  "We review de novo questions of statutory construction."  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.)

## III.  Southwest Is Not Entitled to a Refund

The Government contends "Proposition 62 … does not apply retroactively to invalidate county ordinances that imposed a sales tax in 1956 and automatically incorporate any subsequent changes to the Revenue and Taxation Code."  It also asserts "[t]he … removal of a tax exemption is not the same as the imposition of a new tax."

Southwest argues the counties' ordinances do not automatically adopt amendments to the Bradley-Burns Act, including the jet-fuel sales exemption revision in this case.  More specifically, it explains each ordinance purporting to incorporate "all amendments" to the Revenue and Taxation Code relating to sales tax did not apply to amendments to the Bradley-Burns Act itself.  Finally, Southwest concludes "[t]he 1991 change was an authorization to increase taxes, thus subject to a vote under Proposition 62."

We agree with the Government.  The counties' ordinances automatically adopted the 1991 revision to the jet-fuel sales exemption at issue, and Proposition 62 does not apply to such revision because it is not itself a tax.

### A.  Proposition 62

"[I]n 1986, the voters approved Proposition 62, which 'added a new article to the Government Code (§§ 53720-53730) requiring that all new local taxes be approved by a vote of the local electorate.' "  (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 258.)  Pertinent here, Government Code section 53723 states, in full, "No local government, or district, whether or not authorized to levy a property tax, may impose any general tax unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue."

10.

**B. More Bradley-Burns Act History, and Local Ordinance Implementation**

The original Bradley-Burns Act enacted in 1955 required any county adopting a sales tax to include "[a] provision that all amendments subsequent to the effective date of the enactment of Part 1 of Division 2 of [the Revenue and Taxation Code] relating to sales tax and not inconsistent with [the Bradley-Burns Act] shall automatically become a part of the sales tax ordinance of the county." (Stats. 1955, ch. 1311, § 1.) Each county here included such a provision in their original 1956 ordinances. (Alameda County Ordinance No. 196 N.S., § 7-252; Los Angeles County Ordinance No. 6882, § 7; Orange County Ordinance No. 797, § 8; Sacramento County Ordinance No. 526, § 8; San Bernardino Ordinance No. 790, § 8; San Diego Ordinance No. 1583, § 8; Santa Clara Ordinance No. NS-13, § VIII; see Alameda County Code, § 2.08.190; Los Angeles County Code, § 4.68.090; Orange County Code, § 1-4-70; Sacramento County Code, § 3.04.070; San Bernardino County Code, § 14.0201, subd. (h); San Diego County Code, § 22.107; Santa Clara County Code, § A30-18.)

In 1985, the state Legislature amended the Bradley-Burns Act to create section 7203.2. (Stats. 1985, ch. 591, § 8.) Section 7203.2 provides that a county sales tax automatically adopts by reference sections 7202 *to* 7203, including later amendments to those sections "regardless of whether or not the [county] ordinance was adopted or amended, prior to or after the effective date of" the 1985 bill. The exemptions relating to purchases by common carriers are contained within section 7202.

Legislative analysis attendant to the 1985 amendment explained section 7203.2 streamlined local governments' adoption of changes to the Bradley-Burns Act. A separate analysis provided that, "[u]nder [then] current law, whenever any change in the state sales and use tax law [wa]s made, that change [wa]s automatically incorporated into all the city, county, city and county, and transit district ordinances. However, [that was] not the case when *only local or district taxes* [were] affected." (Legis. Analyst, analysis of Sen. Bill No. 546 (1984-1985 Reg. Sess.) p. 3, emphasis added.)

A third analysis to the 1985 bill offered its purpose as "mak[ing] numerous technical changes." It stated the bill "[a]utomatically incorporate[d] any change made in the Bradley-Burns Uniform Local Sales and Use Tax Law and the Transactions and Use Tax Law into city, county[,] and transit district ordinances[.]" (Legis. Analyst, third analysis of Sen. Bill No. 546 (1984-1985 Reg. Sess.) p. 2.) Finally, it asked whether "forc[ing] cities, counties[,] and transit districts to adopt by reference any future action by the state relating to local taxes" amounted to "delegation of local legislative power to the state," or if "the local tax [was] still truly locally imposed under these conditions?" (*Ibid.*)

## C. Analysis

We begin with analyzing the Bradley-Burns Act and the county ordinances implementing it. Because we will find no issues with the counties' ordinances, we turn next to whether Proposition 62 required voters to approve the 1991 revision to the jet-fuel-sales-tax exemption. We conclude it did not.

### i. Bradley-Burns Act, County Ordinances, and Automatic Incorporation

As explained, the Bradley-Burns Act imposed certain conditions on counties if a county wished to implement a sales tax. One such condition, found today at section 7202, subdivision (c), required a county sales tax ordinance to include "[a] provision that all amendments subsequent to the effective date of the enactment of Part 1 of Division 2 of [the Revenue and Taxation Code] relating to sales tax and not inconsistent with [the Bradley-Burns statutes], shall automatically become a part of the sales tax ordinance of th[at] county."[8]

---

[8] It is unclear what "all amendments" refers to as the sentence appears incomplete; as noted immediately below, the counties in this case did, and for nearly 70 years, have interpreted it to mean "all amendments" to the Revenue and Taxation Code. (Cf. *Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 352 ["An

Every county in this case implemented this provision as follows: "All amendments to the Revenue and Taxation Code … which relate to the sales and use tax and which are not inconsistent with [the Bradley-Burns Act statutes] shall automatically become a part of" the county's sales tax.  The counties' provisions are capable of only one reasonable interpretation—if an amendment to the Revenue and Taxation Code relates to sales taxation, then it becomes a part of every county's sales-tax law, *unless* that amendment is inconsistent with the Bradley-Burns statutes, i.e, sections 7200 to 7226.

Relevant here, in 1991 the Legislature amended the Revenue and Taxation Code to eliminate an exemption for certain jet-fuel sales to a sales tax that otherwise applied to "the sale of all tangible personal property sold … at retail[.]"  (§ 7202, subd. (a).)  Because that amendment relates to sales taxation *and* it is not inconsistent with the Bradley-Burns statutes, it automatically became a part of each county's sales tax.

The superior court, and Southwest, incorrectly conclude amendments to the Bradley-Burns statutes are not automatically incorporated by the counties' sales tax laws.  Southwest, for example, argues the county ordinances in this case "incorporate the State's tax base in Part 1 and later changes to Part 1[, but] do not incorporate later changes to [the] Bradley-Burns [statutes], codified in Part 1.5."  Southwest's argument defies logic.

The ordinances in this matter incorporate "[a]ll amendments to the Revenue and Taxation Code … not inconsistent with" the Bradley-Burns statutes.  There is no ambiguity.  Undeterred, Southwest suggests the "not inconsistent" qualifier means changes to the Bradley-Burns statutes, including the jet-fuel sales revision at issue here, are not automatically incorporated.

Specifically, Southwest asserts that "[a]sking if a provision of Part 1.5," i.e., the Bradley-Burns statutes, "is consistent with Part 1.5" i.e., itself, "would be nonsensical."

---

agency's consistent maintenance of the interpretation under scrutiny, ' "especially if [it] is long-standing" ' is a circumstance which weighs in favor of judicial deference."].)

13.

Not so. It is entirely possible a change to one Bradley-Burns statute could be inconsistent with another of its statutes. In that situation, a county sales tax would not automatically incorporate the new, inconsistent change. To adopt Southwest's interpretation would require us to rewrite each county's plainly understood ordinance.

Next, Southwest contends the 1985 addition of section 7203.2, which pertinently states "[t]he sales and use tax ordinance of a county, city, city and county, or redevelopment agency adopted pursuant to this part, shall be deemed to adopt by reference the provisions of Sections 7202 to 7203," is proof the all-amendments-language found in section 7202 and in each county's ordinance does not apply to the Bradley-Burns statutes. In other words, section 7203.2 "would not have been necessary if [section] 7202 … incorporated amendments to [the] Bradley-Burns" Act statutes. Again, Southwest misreads the law.

By its own terms, section 7202, subdivision (c)—the automatic incorporation provision—applies only to "the sales tax ordinance of *the county*." (Emphasis added.) In 1985, the Legislature added section 7203.2, another automatic incorporation provision, which widens section 7202 to apply to "[t]the sales and use tax ordinance of a *county, city, city and county, or redevelopment agency*[.]" (§ 7203.2, italics added.) Contrary to Southwest's contention, there is neither conflict nor superfluousness between these sections. Indeed, section 7302.2 is irrelevant and inapposite in its application to this case which involves county government—the original focus of section 7202 and the entire Bradley-Burns Act.[9] (See *Cultiva, supra,* 89 Cal.App.5th at p. 880 ["Over time, the

_____

[9] The interplay between section 7202 and 7302.2 is confirmed by legislative analysis. As Southwest itself points out, the legislative analysis to the 1985 amendment creating section 7302.2 explained "[u]nder [then] current law, *whenever any change in the state sales and use tax law [wa]s made, that change [wa]s automatically incorporated into all the city, county, city and county, and transit district ordinances.* However, [that was] not the case when only local or district taxes [were] affected." ((Legis. Analyst, analysis of Sen. Bill No. 546 (1984-1985 Reg. Sess.) p. 3, emphasis added.) Without doubt, section 7302.2 simply expands section 7202's coverage.

14.

Legislature expanded the scope of Bradley-Burns and made city participation in the law—once voluntary—mandatory for those seeking to impose sales and use taxes."].)

In sum, the county-sales-tax ordinances in this case automatically incorporate all amendments to the Revenue and Taxation Code so long as those amendments relate to sales taxation and are not inconsistent with sections 7200 to 7226.  Those amendments, of course, include amendments to sections 7200 through 7226 themselves because those are contained within the Revenue and Taxation Code.  Accordingly, the Legislature's 1991 elimination of the jet-fuel-sales exemption was incorporated automatically into every county sales tax ordinance in this case.

### ii.  Proposition 62 Does Not Apply

Notwithstanding the fact the county ordinances here automatically incorporated the jet-fuel-sales-exemption revision, collecting that revenue is only lawful if the revision complies with Proposition 62.  Proposition 62, of course, "require[es] that all new local taxes be approved by a vote of the local electorate." (*Guardino, supra,* 11 Cal.4th at p. 231.)  "The requirement of voter approval"—pursuant to an initiative—"before a local government enacts a proposed tax is" simply a secondary "condition on the exercise of local taxing power." (*Id.* at p. 250.)

Southwest suggests Proposition 62 required each county in this case "to submit the increased taxation to the voters."  The government contends Proposition 62 does not apply because "the counties did not enact or impose a tax in 1991[.]"

We agree with the Government.  The Legislature's 1991 action eliminating a sales-tax exemption for certain jet-fuel sales, and automatically incorporated by each county, was not a tax.

The sales tax at issue in this matter applies to, and has always applied to, "the sale of all tangible personal property sold at retail[.]  (See Alameda County Ordinance No. 196 N.S., § 7-252; Los Angeles County Ordinance No. 6882, § 7; Orange County Ordinance No. 797, § 8; Sacramento County Ordinance No. 526, § 8; San Bernardino

15.

Ordinance No. 790, § 8; San Diego Ordinance No. 1583, § 8; Santa Clara Ordinance No. NS-13, § VIII; see Alameda County Code, § 2.08.190; Los Angeles County Code, § 4.68.090; Orange County Code, § 1-4-70; Sacramento County Code, § 3.04.070; San Bernardino County Code, § 14.0201, subd. (h); San Diego County Code, § 22.107; Santa Clara County Code, § A30-18; § 7202, subd. (a).)  That is the tax.  At the same time, the Legislature, and the counties accordingly, exempted from the sales tax "[r]eceipts from sales to operators of common carrier and waterborne vessels of property to be used or consumed in operation of such" business.  (Stats. 1955, ch. 1311, § 1; Alameda County Ordinance No. 196 N.S., § 7-215(c); Los Angeles County Ordinance No. 6882, § 4(b)(4); Orange County Ordinance No. 797, § 4(b)(4); Sacramento County Ordinance No. 526, § 4(b)(4); San Bernardino Ordinance No. 790, § 4(b)(4); San Diego Ordinance No. 1583, § 4(b)(4); Santa Clara Ordinance No. NS-13, § IV(d).)

Over the years, as noted of course, that exemption was modified to exclude only "80 percent" of certain sales to common carriers, and then again to *not* apply at all to sales "of fuel or petroleum products[.]"  (See, generally, stats. 1971, ch. 1400, § 10; Sen. Bill No. 180 (1991-1992 Reg. Sess.) § 10; § 7202, subd. (g).)  The sale of "fuel or petroleum products," including jet fuel, was otherwise always taxed at the full rate—the exemption only applied if the sale was 1) to a common carrier and 2) the common carrier used the property to operate its ordinary business.

Modifications to such a specific exemption do not constitute a tax.  Rather, they simply revise exemptions to an otherwise all-encompassing tax.  Setting the exemptions to a tax falls well within the Legislature's constitutional power authorizing a local tax.

In arguing otherwise, Southwest marshals *AB Cellular LA, LLC v. City of Los Angeles* (2007) 150 Cal.App.4th 747.  There, the appellate court noted "a tax is increased if a decision by an agency revises the methodology by which a tax is calculated, if that revision results in an increased amount being levied on any person or parcel." (*Id.* at p. 763.)  Consequently, it held a revision to the methodology used to calculate a tax

required voter approval under Proposition 218 if it resulted in "either a larger tax rate or a larger tax base[.]" (*Ibid.*)

The 1991 revision in this case did not increase the tax rate or the tax base—it applied, and continues to apply, to all retail sellers of tangible personal property and at the same rate.[10]  Southwest is, without doubt, a retail seller of tangible personal property.

Two cases well illustrate our point.  First, in *Loeber v. Lakeside Joint School Dist.*, voters sought "to create an exemption to any parcel tax levied by a school district[.]" (*Loeber v. Lakeside Joint School Dist.* (2024) 103 Cal.App.5th 552, 559.)  The appellate court found the proposed exemption did not legally " 'reduc[e] any tax.' " (*Id.* at p. 584.) The court notably held a tax exemption does "not change the tax rate[.]." (*Id.* at p. 582.)

Second, and squarely on point, is *Gonzalez v. City of Norwalk* (2017) 17 Cal.App.5th 1295 (*Gonzalez*).  There, city voters approved a tax on "municipal utilities, including telephone service." (*Id.* at p. 1297.)  As enacted, the tax excluded from its ambit certain telephone services.  (See *id.* at pp. 1297-1298.)  The city later, in essence and effect, removed the exclusion and began taxing greater services than originally intended.  (*Id.* at p. 1298.)  The appellate court concluded the revision was not itself a tax "within the meaning of Proposition[] 62[.]" (*Id.* at p. 1312.)  Central to its conclusion was the fact the tax applied, both before and after the revision, to "all telephone service" at the same rate.  (*Ibid.*)

These cases are consistent with our conclusion.  Indeed, the present litigation is indistinguishable from *Gonzalez, supra*.  In each, the tax applied to "all" respective transactions and at the same rate before and after an exemption was eliminated.

In sum, the Legislature's 1991 elimination of the jet-fuel-sales-tax exemption was not a tax within the meaning of Proposition 62.  Accordingly, the electorate in each county had no right to vote on collecting the full tax at issue in this case.

---

[10] The relevant tax rate has remained unchanged or unchallenged.

Last, we address Southwest's final point.[11]  Recalling the legislative history to the 1985 Bradley-Burns Act amendment, Southwest "queries, 'Is the local tax still truly locally imposed under these conditions?' "  The answer is "yes."

Every county involved in this litigation enacted, and chose to enact, a sales tax. The Bradley-Burns Act is not self executing.  (§ 7201 ["Any county may by action of its board of supervisors adopt a sales and use tax in accordance with the provisions of this part."].)  Each county had to agree, but voluntarily agreed, to automatically incorporate amendments to the Bradley-Burns statutes.  The Legislature was entitled to impose such a condition upon exercising its power to authorize local taxation.  Nothing is amiss in this scheme.

When voters enacted Proposition 62, they were aware of the Bradley-Burns Act, their local implementing ordinances, and the automatic incorporation provisions. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.)  If the local-sales-taxation scheme has fallen in disfavor—due to automatic incorporation or otherwise—the remedy is again at the ballot box, not at the courthouse.

---

[11] The parties also disagree whether charter counties have independent authority to impose a local sales tax.  (See Cal. Const., art. XI, §§ 3 & 4.)  Because we uphold the full-jet-fuel sales tax on a different basis, we need not reach the charter point, or any other constitutional issue including whether declaratory relief is available in a tax refund action.  (See, generally, Cal. Const., art. XIII, § 32; *People v. Garcia* (2017) 2 Cal.5th 792, 804 [there exists "a preference for avoiding the unnecessary resolution of constitutional questions"].)

## **DISPOSITION**

The judgment is reversed.  The August 31, 2023 order denying judgment on the pleadings is vacated.  The trial court is directed on remand to enter a new judgment consistent with this opinion.  Costs on appeal are awarded to appellants.


SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


MEEHAN, J.

19.

Filed 9/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SOUTHWEST JET FUEL CO., | F087656, F087657 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CECG01224) |
| v. | |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, | **ORDER MODIFYING OPINION AND GRANTING PUBLICATION** [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant; | |
| CITY OF ONTARIO, et al., | |
| Interveners and Appellants. | |

It appearing that the nonpublished opinion filed in the above entitled matter on August 28, 2025, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports.

Additionally, IT IS ORDERED that the opinion filed herein on August 28, 2025, be modified as follows:

1.     On page 14, delete the fourth sentence of the second full paragraph that begins "Indeed, section 7302.2 …" and replace it with the following:

Indeed, section 7203.2 is irrelevant and inapposite in its application to this case which involves county government—the original focus of section 7202 and the entire Bradley-Burns Act.

2. On page 14, delete the text of footnote 9 at the bottom of the page and replace it with the following:

The interplay between section 7202 and 7203.2 is confirmed by legislative analysis. As Southwest itself points out, the legislative analysis to the 1985 amendment creating section 7203.2 explained "[u]nder [then] current law, *whenever any change in the state sales and use tax law [wa]s made, that change [wa]s automatically incorporated into all the city, county, city and county, and transit district ordinances.* However, [that was] not the case when only local or district taxes [were] affected." ((Legis. Analyst, analysis of Sen. Bill No. 546 (1984-1985 Reg. Sess.) p. 3, emphasis added.) Without doubt, section 7203.2 simply expands section 7202's coverage.

There is no change in the judgment.

SNAUFFER, J.

WE CONCUR:

FRANSON, Acting P. J.

MEEHAN, J.

2.